AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>JACQUELINE NUMATA<br><br>*Defendant(s)* | )<br>)<br>) Case No. 8:15-MJ-1220-T-EAJ<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 16, 2015__ in the ~~county of~~ __jurisdiction of__ ~~in the~~ __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(e) | Using an instrument of interstate or foreign commerce to convey a false bomb threat. |
| 18 U.S.C. § 3261(a) | Engaging in conduct outside the United States that would constitute a felony offense if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Helen Luong, Special Agent, USAF-OSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __04/15/2015__

_____
*Judge's signature*

City and state: __Tampa, Florida__   ELIZABETH A. JENKINS, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Helen Luong, being duly sworn, depose and state the following:

### **I.     INTRODUCTION AND AGENT BACKGROUND**

1.    I am a Special Agent with the U.S. Air Force Office of Special Investigations (AFOSI) and am assigned to Detachment 340, located at MacDill Air Force Base in Tampa, Florida. I have been employed at AFOSI as a Special Agent since May, 2013. I am a graduate of the Criminal Investigator Training Program, the AFOSI Basic Criminal Investigators Course, the High-Value Detainee Interrogation Group (HIG), and the Sex Crimes Investigator Training Program at the Federal Law Enforcement Training Center at Glynco, Georgia. My responsibilities as a Special Agent include investigating major criminal violations of military personnel and civilians working for or contracted by the U.S. Air Force. As a Special Agent, I am authorized to investigate violations of the laws of the United States, to execute search warrants, and to apprehend service members and civilians working for or contracted by the U.S. Air Force.

2.    This affidavit is made for the purpose of supplying probable cause to support a Criminal Complaint against Jacqueline NUMATA. The information in this affidavit is based on information conveyed to me by other law enforcement officials, and on my review of reports related to NUMATA's activities. Because this affidavit is made for the sole purpose of providing probable cause to support a Criminal Complaint against NUMATA, I have not included every detail of every aspect of the investigation. Rather, I have set forth only the facts that are necessary to establish probable cause to believe that NUMATA has committed the following federal offense: communicating false

threats to injure persons or property by means of an explosive in violation of 18 U.S.C. § 844(e).

## II. **PROBABLE CAUSE**

3. NUMATA is a U.S. citizen and U.S. government non-appropriated funds employee assigned to Misawa Air Base (MAB), Japan, specifically working under the Army and Air Force Exchange Service at Burger King on MAB. NUMATA falls under the U.S. Status of Forces Agreement with Japan while working at MAB. She is also subject to the Military Extraterritorial Jurisdiction Act, 18 U.S.C. § 3261 *et. seq.*

4. While at MAB, NUMATA temporarily resided at government quarters Unit 1850-D on the base. NUMATA resided at that address unofficially, but with the express permission from USAF Senior Airman Juan Gonzalez and his wife, Delandra Johnson, the official occupants of that address. This residence and the occupants of that residence fall under the jurisdiction of the Military Magistrate at MAB; however, Airman Gonzalez provided consent for a search of the residence at 1850-D, which allowed for the subsequent collection of any evidence considered to be fruits and instrumentalities of the previously mentioned violations.

5. On January 19, 2015, the Misawa Police Station in Misawa City, Japan, informed AFOSI that a bomb threat directed at MAB was emailed to the Misawa City International Center, and forwarded to the Misawa Police. The threat was from "t****@sigaint.org"; "SIGAINT" is an anonymous email service utilizing the TOR Darknet. The email address and email were both untraceable due to the use of TOR. The threat stated, "I am Takashi Numata in Misawa City. Tomorrow I will explode

2

Misawa Air Base at 2200. Die Americans!" AFOSI worked with the MAB Communications Squadron to identify the source of the threat.

6. On January 26, 2015, SA McCray met with Misawa Police officers and obtained information on NUMATA and Takashi Numata, her estranged husband. The officers had a well-documented case file cataloguing physical abuse and drug allegations by NUMATA against T. Numata, and vice versa. The report disclosed that the couple's two-year-old biological daughter was placed in an orphanage by NUMATA during a custody battle between NUMATA and T. Numata. Misawa Police officers did not believe T. Numata was behind the incidents bearing his name and they reported they regularly drove by his home to check on him.

7. In September or October 2014, during the couple's custody battles, Misawa Police officers captured NUMATA on closed-circuit surveillance footage, breaking into her former residence where T. Numata lived, and taking several items from the home, including an Apple iPad. The surveillance cameras were put in place by Misawa Police after T. Numata reported that NUMATA attempted to set fire to the house.

8. On March 11, 2015, agents interviewed T. Numata and he denied having anything to do with the bomb threat. T. Numata stated he had changed his email address after NUMATA stole his iPad from his residence. T. Numata was unable to access his old email account because NUMATA had changed the password to his accounts without his knowledge. T. Numata consented to having his media devices imaged to exclude himself as a suspect in the investigation.

9. On March 16, 2015, at 1:53 pm, the MAB Public Affairs office and the Misawa City International Center received a second bomb threat. This bomb threat was

submitted using the "How are we doing?" form on the MAB webpage (http://www.misawa.af.mil) with a return email address of o****@ezweb.ne.jp; the form allows a person to input any email address they want, real or fake. The form was filled out using TOR Darknet, so the IP address was once again untraceable.

10. The threat stated, "This is Numata Takashi of Misawa. I am ban from base, but I come on in back of friend's car. I put 20 bombs on base. At all 3 schools, BX, Burger king, post office, daycare and other place. Each bomb go off at 3pm. Many people die. No American base in Japan! If you contact police, they believe me! I say I deny all, and I do not go to jail! American fucker die!" As a result of this threat, all facilities and areas within the affected perimeter zone of the buildings listed above were evacuated. Traffic patterns were changed and security postures at the base were increased.

11. On March 16, 2015, AFOSI agents in Japan interviewed USAF Senior Airman Juan Gonzalez, whose wife, Delandra Johnson, was friends with NUMATA. Gonzalez stated that NUMATA had stayed at his residence (Base unit 1850-D) four to five times per week since September, 2014. When she stayed at Gonzalez's home, NUMATA stayed in the spare bedroom, which usually acted as storage for his wife's clothing and other personal items. When NUMATA needed a place to stay, she messaged Gonzalez through Facebook or texted him. Gonzalez would then leave his front door unlocked; NUMATA never had her own key.

12. Gonzalez said that NUMATA did not have much in the way of personal belongings other than a few carry-on suitcases, which she left at the home whether or

not she stayed on any given night. He also stated that NUMATA had a cellular phone and an iPad, and had access to his wireless internet.

13. Gonzalez then provided verbal and written consent for a search of his cellular phone used for communications with NUMATA, a search of his residence, and for his printer. After the interview at approximately 6:30 pm, Special Agent Javier Pineiro and another AFOSI Special Agent accompanied Gonzalez to search his home, including the spare bedroom used by him, his wife and NUMATA.

14. Also on March 16, 2015, beginning at approximately 5:45 pm, a non-custodial interview of NUMATA was conducted by SA McCray, and NUMATA confessed to making the bomb threats. She stated that from 2014 to March 23, 2015, NUMATA and T. Numata were engaged in divorce and custody proceedings. In order to increase the likelihood of a favorable outcome and to seek retribution for the alleged physical abuse T. Numata inflicted on NUMATA, she researched ways to falsely incriminate T. Numata.

15. On March 16, 2015, after NUMATA saw no adverse actions against T. Numata from the initial threat, NUMATA accessed an anonymous email website and sent an email to several MAB organizations/offices, threatening to bomb the schools, daycares, and several other highly populated buildings on base. NUMATA signed the email with T. Numata's name in order to draw negative law enforcement attention to T. Numata. NUMATA stated that all of the electronic devices which she utilized to complete the aforementioned actions were located at Gonzalez' residence, unit 1850-D on MAB. NUMATA initially provided agents with verbal consent to look for, retrieve, and search

her devices. At the end of the interview, however, she declined written consent to search her devices.

16. After NUMATA had provided verbal consent to search for and retrieve her electronic devices, and after Gonzalez had provided written consent to search his home, AFOSI agents began the search of Gonzalez' residence, unit 1850-D. This search yielded several items of evidentiary value, specifically:

- One Sony Ericsson Xperia cellular phone with subscriber identification module (SIM) card enclosed, serial number CB511TNJV8;
- One Apple iPad (black), serial number DMPMW9PCF4YF;
- One Apple iPad (white), serial number DMPJN71TF187;
- One Olympus digital camera with memory card, serial number UPQ015030;
- One HTC AU provider cellular phone with SIM card, serial number SHTBC06190;
- One Office Depot brand compact disc-rewritable (CD-RW) labeled "March 10, 2013 DV Incident"; and
- One Brother Work Smart printer, serial number U63535G4F148160.

17. Because NUMATA revoked her consent to search her devices, on March 23, 2015, a search warrant was issued in the District of Columbia by United States Magistrate Judge Alan Kay to search the devices.

18. On March 25, 2015, SA McCray conducted a preliminary, cursory search of NUMATA's HTC brand AU provider cellular phone which was seized during the search of Gonzalez's residence. The search revealed the following:

 a. NUMATA had the email address, o****@ezweb.ne.jp saved as #88 in her cellular phone contacts. o****@ezweb.ne.jp was the email address that was used in the second bomb threat email sent on March 16, 2015.

 b. On March 16, 2015, NUMATA's gmail.com email account had an email appearing to be from T. Numata. The email contained the exact text of the bomb threat email sent on March 16, 2015: "This is Takashi of Misawa. I am ban

6

from base, but I come on in back of friend's car. I put 20 bombs on base. At all 3 schools, BX, Burger King, post office, daycare and other place. Each bomb go off at 2pm. Many people die. No American base in Japan! If you contact police, they will believe me! I say I deny all, and I do not go to jail! American fucker die! i.works." In addition, the email was time-stamped in NUMATA's inbox at 12:10. It was evident that 12:10 meant 12:10 PM based upon the fact that NUMATA's cellular phone was set to military time. The time indicates that NUMATA possessed the email prior to it being received by officials at Misawa Air Base, Japan between 1345 and 1353 hours.

19. AFOSI Agents discovered that NUMATA's iPads were password protected, though she had previously stated that none of her devices had PINs. AFOSI Special Agents then requested that NUMATA provide her consent to search the iPads and provide her PIN, which she did on March 29, 2015.

20. After retrieving her PIN, an AFOSI Special Agent conducted a cursory search of NUMATA's white Apple brand iPad, which was seized during the search of Gonzalez's residence. Within the Notes application, under the "All Notes" tab, a note was created on March 16, 2015 at 1:20 pm. The note contained the same text as the second bomb threat. This Note was created on March 16, 2015, thirty-three minutes prior to MAB Public Affairs receiving the second bomb threat.

21. On April 1, 2015, an AFOSI agent conducted a follow-up review of NUMATA's black Apple brand iPad, which revealed that NUMATA had purchased numerous apps, including: The Onion Router (TOR) powered web browser for

anonymous browsing, a free TOR browser, and Microsoft Word. NUMATA admitted to using TOR browsers to conceal her activities for the bomb threat.

22. I am advised that 18 U.S.C. § 3261(a) makes it a crime for an individual to engage in conduct outside the United States that would constitute an offense punishable by imprisonment for more than one year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States while employed by or accompanying the Armed Forces outside the United States. I am further advised that 18 U.S.C. § 3267(1)(a) defines the term "employed by the Armed Forces outside the United States" as including a civilian employee of the Department of Defense (including a non-appropriated fund instrumentality of the Department) who is present or residing outside the United States in connection with such employment and is not a national of or ordinarily resident in the host nation. I am further advised that 18 U.S.C. § 3267(2)(A) defines the term "accompanying the Armed Forces outside the United States as including a dependent family member of a civilian employee of the Department of Defense (including a non-appropriated fund instrumentality of the Department) who is present or residing outside the United States in connection with such employment and is not a national of or ordinarily resident in the host nation.

23. I am further advised that 18 U.S.C. § 844(e) requires that a defendant, through the use of mail, telephone, telegraph, or other instrument of interstate or foreign commerce maliciously conveyed false information, knowing it to be false, concerning an attempt or alleged attempt being made, or to be made: (1) to kill, injure, or intimidate any individual; or (2) unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive.

24. I am further advised that venue for the conduct described in this affidavit is appropriate in the Middle District of Florida because it is anticipated that NUMATA will be arrested or first brought to the Middle District of Florida, in accordance with the provisions of 18 U.S.C. § 3238. Venue is further appropriate in the Middle District of Florida because I am advised that NUMATA's last known residence was in Tampa, Florida.

### III. CONCLUSION

25. Based on the facts and circumstances described above, there is probable cause to believe that, on or about March 16, 2015, NUMATA violated 18 U.S.C. § 844(e) (using an instrument of interstate or foreign commerce to convey a false bomb threat). Accordingly, I respectfully request that the Court issue a complaint charging NUMATA with this crime.

Helen Luong, Special Agent
Air Force Office of Special Investigations

Sworn to and subscribed before me
this 15th day of April, 2015.

ELIZABETH A. JENKINS
United States Magistrate Judge

T:\_Criminal Cases\N\Numata, Jacqueline_2015R00607_RKJV_Affidavit in Support of Criminal Complaint.docx